RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0360p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

TODD DANIELS,

　　　　　　　*Petitioner-Appellant,*

　　　*v.*

　　　　　　　No. 05-1846

BLAINE LAFLER, Warden,

　　　　　　　*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-71418—Denise Page Hood, District Judge.

Argued: July 17, 2007

Decided and Filed: September 5, 2007

Before: BOGGS, Chief Judge; and CLAY and ROGERS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** James Sterling Lawrence, Royal Oak, Michigan, for Appellant. William C. Campbell, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** James Sterling Lawrence, Royal Oak, Michigan, for Appellant. William C. Campbell, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

_____

**OPINION**

_____

　　　　BOGGS, Chief Judge. In 1996, Todd Daniels helped a friend to burn down a house in Detroit, killing three children. In 1997, a Michigan state jury convicted him of three counts of second-degree murder and seven counts of assault within intent to commit murder. The trial court sentenced him to twenty to forty years of imprisonment. The district court denied his petition for a writ of habeas corpus; he now appeals. First, he contends that the trial court violated his Sixth Amendment right to counsel by replacing his original court-appointed attorney with a different court-appointed attorney, allegedly without cause. Second, he argues that an instruction given to his jury regarding the mental state required to commit murder as an aider and abettor so gravely misrepresented Michigan law that it violated his Fourteenth Amendment right to due process, and that his trial counsel was ineffective for failing to object to the allegedly erroneous instruction.

　　　　We affirm. We reject Daniels's first claim because the Sixth Amendment gives an indigent defendant a right to adequate representation but not to his choice of court-appointed counsel. Because Daniels does not allege that the change in counsel prejudiced his defense, he cannot

1

demonstrate a violation of this adequate-representation right and therefore cannot establish a Sixth Amendment violation. We reject Daniels's second claim because, even though one sentence of the instructions contained a confusing and arguably misleading statement of the law, the trial court correctly stated the law at several other times. Consequently, Daniels cannot show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. 141, 147 (1973), or that he was prejudiced by his trial counsel's failure to object.

I

Paula Bailey wanted revenge against "some girls," one of whom apparently was dating her ex-boyfriend. Encouraged by her brother Paul, she offered a thousand dollars to anyone who would burn down their house. Daniels's friend Eugene McKinney took Bailey up on her offer.

With Daniels accompanying him, McKinney drove to a gas station, filled a plastic container with gasoline, drove to the house that Bailey had identified, and poured the gasoline on the side of it near the front porch. Apparently believing that he had not poured enough gasoline to burn the house, McKinney returned with Daniels to the gas station, refilled his container, and then told Daniels to fill an old antifreeze jug with gasoline. McKinney poured his gasoline in the same place by the front porch, while Daniels poured his on the other side of the house, near the back door. McKinney then lit a match; flames engulfed the front porch and the two men ran to the car and left. Daniels did not set fire to the gasoline that he had poured.

After McKinney showed Paula and Paul Bailey that he had "done the job," Paula Bailey paid McKinney a thousand dollars as promised. McKinney gave $200 of the money to Daniels. Soon thereafter, the state brought charges related to the fire against Daniels, McKinney, Paula Bailey, and Paul Bailey. The trial court appointed a separate attorney to represent each defendant. Daniels was charged with three counts of first-degree felony murder, with arson as the underlying felony, and seven counts of assault with intent to commit murder. A jury found him guilty of three counts of second-degree murder and seven counts of assault, but not guilty of first-degree felony murder. Having exhausted his state remedies, he filed the petition for a writ of habeas corpus at issue in this appeal.

II

Daniels bases his first claim for relief on the replacement of his original court-appointed attorney.

A

The trial court scheduled a hearing to consider pre-trial motions on April 24, 1997. McKinney and Paula Bailey filed motions prior to that date; Daniels, then represented by Mark Brown, did not. Of the four defendants' attorneys, only Brown appeared at the hearing. At the hearing, the prosecutor intimated that Brown had stated that he intended to file a motion to suppress a statement that Daniels had made to police after his arrest, but had not done so by the court's deadline. Trial Court Tr., April 24, 1997, at 3-4 (District Court document 10). Brown did not say anything.

Frustrated by the attorneys' failure to appear and wishing to avoid postponement of the trial, set to begin on July 7, the trial court decided to "replace all counsel [and] pick counsel who can try this case on the trial date we currently have." It appointed Lawrence Burgess to replace Brown in representing Daniels. During the next court date, Daniels attempted to object to something, but was told that he could not speak except through Burgess. Daniels now says that he wished to object to the replacement of Brown as his attorney. Burgess made no such objection, but he did file four pre-

trial motions, including a motion to suppress.  The case proceeded to trial with Burgess representing Daniels.

B

The Sixth Amendment states that, "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const., amend. VI.  Daniels contends that the trial court violated this right when it removed Brown as Daniels's attorney, allegedly without cause.  We disagree.

The Sixth Amendment's right to counsel encompasses two distinct rights:  a right to adequate representation and a right to choose one's own counsel.  The adequate-representation right applies to all defendants and "focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984).  A defendant has the right to "counsel acting in the role of an advocate," *Anders v. California*, 386 U.S. 738, 743 (1967), who will "require the prosecution's case to survive the crucible of meaningful adversarial testing," *Cronic*, 466 U.S. at 656.  Daniels does not claim that Brown could have been a better advocate than Burgess was; indeed, the record shows, if anything, that Burgess put forward a stronger defense, filing four pre-trial motions where Brown had filed none.  Without even alleging prejudice from the change in counsel, Daniels cannot establish that the change violated his adequate-representation right.

Nor can he demonstrate a violation of any right to his counsel of choice.   In *Powell v. Alabama*, 287 U.S. 45, 53 (1932), the Supreme Court stated that a criminal defendant who hires, and pays for, an attorney has the right to select that attorney.  More recently, in *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2563 (2006), it held that a defendant could obtain a new trial without showing prejudice when the trial court arbitrarily denied him the services of his retained counsel – in that case, by erroneously refusing to grant the chosen attorney admission *pro hac vice*.  If they applied to Daniels, the rights at issue in *Powell* and *Gonzalez-Lopez* might very well entitle him to relief.

Yet neither *Powell* nor *Gonzalez-Lopez* suggests that the choice-of-counsel right at issue is universal to all defendants.  The *Gonzalez-Lopez* Court explicitly stated that the basis for its decision was "the right of a defendant *who does not require appointed counsel* to choose who will represent him," indicating that the erroneous or arbitrary exclusion of court-appointed counsel might not trigger the same constitutional scrutiny.  *Id.* at 2561 (emphasis added).  In *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989), the Court was even more direct: "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."  Although this language from *Gonzalez-Lopez* and *Caplin & Drysdale* is dicta, its import is clear:  Daniels, an indigent defendant forced to rely on court-appointed counsel, has no choice-of-counsel right.  Thus, he is not entitled to relief.

We reach this result without applying the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d).  The last state court to consider Daniels's Sixth Amendment claim rejected it not because it concluded that defendants relying on court-appointed counsel have no choice-of-counsel right, but rather because it believed that Daniels had acquiesced to the replacement of Brown and that the trial court had good cause to replace Brown.[1]  *People v. Daniels*, No. 210014, 2000 Mich. App. LEXIS 1504, at *10 (Mich. Ct.

---

[1]The warden reprises these arguments regarding acquiescence and good cause here.  Because we can resolve Daniels's claim without reaching those arguments, we decline to address them.  One might think that our approach – confronting a broad question about the scope of the Sixth Amendment's choice-of-counsel right to avoid questions regarding the details of Daniels's specific case – violates the maxim that we should "rest [our] decision on the narrowest

App. Oct. 3, 2000). Indeed, the court suggested that it would have resolved the Sixth Amendment question in Daniels's favor, stating that "[a]fter adversary judicial proceedings have been initiated, a trial court's removal of a criminal defendant's appointed counsel for any reason other than gross incompetence, physical incapacity, or contumacious conduct violates the defendant's constitutional right to counsel." *Ibid.* Thus, in reviewing the Sixth Amendment question, we face a state court's treatment of an issue in a manner favorable to the petitioner but not dispositive of his claim for relief.

In this situation, we think that *de novo* review is appropriate. We should not apply AEDPA deference to the state court's pro-petitioner resolution of the issue because AEDPA's standard of review is "a precondition to the grant of habeas relief ('a writ of habeas corpus . . . shall not be granted' unless the conditions of § 2254(d) are met), not an entitlement to it." *Fry v. Pliler*, 127 S. Ct. 2321, 2327 (2007). Nor should we apply AEDPA deference to a hypothetical ruling against the petitioner on the disputed constitutional question: "AEDPA applies only to claims 'adjudicated on the merits in State court proceedings,' and the standard of review it mandates depends on an assessment of *an actual decision* made by the state court." *Eddleman v. McKee*, 471 F.3d 576, 583 n.3 (6th Cir. 2006) (emphasis in original) (quoting 28 U.S.C. § 2254(d)). As a result, we default back to the standard of review that we would have applied prior to the passage of AEDPA – *i.e.*, to *de novo* review.

Carrying out this *de novo* review, and in light of the clear guidance from the Supreme Court discussed above, we hold that a defendant relying on court-appointed counsel has no constitutional right to the counsel of his choice. This does not mean that an indigent defendant never could establish that the arbitrary replacement of court-appointed counsel violated his constitutional rights. The replacement of court-appointed counsel might violate a defendant's Sixth Amendment right to adequate representation or his Fourth Amendment right to due process if the replacement prejudices the defendant – *e.g.*, if a court replaced a defendant's lawyer hours before trial or arbitrarily removed a skilled lawyer and replaced him with an unskilled one. But because Daniels does not even allege prejudice here, we must affirm the denial of his Sixth Amendment claim.

### III

In his second claim for relief, Daniels challenges the jury instructions given by the trial court, arguing that the instructions so seriously misstated the law as to violate his right to due process under the Fourteenth Amendment and that Burgess's failure to object to the instructions constituted ineffective assistance of counsel.

### A

To be guilty of second-degree murder in Michigan, a defendant must have acted with malice, that is, "the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm." *People v. Aaron*, 299 N.W.2d 304, 326 (Mich. 1980). This requirement applies whether the defendant is charged as a principal or as an aider and abettor. *People v. Kelly*, 378 N.W.2d 365, 370 (Mich. 1985). Daniels contends that one passage in the jury instructions might have prompted the jury to convict him even if it did not believe that this *mens rea* requirement was satisfied:

---

possible ground capable of deciding the case." *Dames & Moore v. Reagan*, 453 U.S. 654, 660 (1981). We proceed as we do because it is the most direct way to resolve the case: we have serious doubts as to whether, even applying AEDPA deference, the record supports the state court's conclusions that Daniels acquiesced and that there was good cause for Brown's removal.

> In determining whether the defendant intended to help someone else commit the charged offense of felony murder and assault with intent to murder, you may consider whether that offense was fairly within the common, unlawful activity of arson; that is, whether the defendant *might have expected the charged offense to happen* as part of that activity. There can be no criminal liability for any crime not fairly within the common, unlawful activity.

(emphasis added). This instruction, according to Daniels, permitted the jury to convict him by concluding that he *might have expected* the charged offense to happen instead of that he *actually expected* the charged offense to happen.

The trial court also gave four other instructions addressing the *mens rea* required to convict Daniels of murder as an aider and abettor. First, after listing the elements of first-degree felony murder, it instructed the jury on the lesser included offense of second-degree murder:

> To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt[:] First, that the defendant caused the death of [the three victims]; that is, that [the victims] died as a result of the arson.
>
> Second, that the defendant had one of these three states of mind. He intended to kill or he intended to do great bodily harm to [the victims], or he knowingly created a very high risk of death or great bodily harm, knowing that death or such harm would be the likely results of his actions.

Second, it addressed factors relevant to the assessment of Daniels's mental state:

> The defendant's intent may be proved by what he said, what he did, how he did it, or any other facts and circumstances in evidence.
>
> You must think about all the evidence in deciding what the defendant's state of mind was at the time of the alleged killing. The defendant's state of mind may be inferred from the kind of weapon he used, the type of wound inflicted, the acts and words of the defendant, and any other circumstances surrounding the alleged killing.

Third, it emphasized that the jury must determine Daniels's mental state as a possible aider and abettor, not McKinney's mental state as the principal, in order to find Daniels guilty:

> You should consider Todd DeShawn Daniels separately. He is entitled to have his case decided on the evidence and the law that applies to him. It is not enough merely to find that Mr. Daniels agreed to commit the crime of arson. Instead, you must determine, as to Mr. Daniels, separately, whether he intended to kill, whether he intended to do great bodily harm, or whether he created a very high risk of death or great bodily harm, knowing that death or such harm was the probable result of what he did.

Fourth, it addressed the standard for liability as an aider and abettor: "Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it, and can be convicted of that crime as an aider and abettor."

B

Because "federal habeas corpus relief does not lie for errors of state law," we may grant the writ based on errors in state jury instructions only in extraordinary cases. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "The question in [] a collateral proceeding is 'whether the ailing instruction by

itself so infected the entire trial that the resulting conviction violates due process,' *Cupp v. Naughten*, 414 U.S., at 147, not merely whether 'the instruction is undesirable, erroneous, or even universally condemned,' *id.*, at 146." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Daniels cannot clear this high bar to relief.

First, it is not clear that the instruction Daniels challenges is even inaccurate. The challenged instruction states a necessary condition for guilt, not a sufficient condition. It says that a defendant cannot be guilty of aiding and abetting murder simply because he aided and abetted another activity that improbably resulted in a death, even if the defendant intended for the death to occur:

> In determining whether the defendant intended to help someone else commit the charged offense of felony murder and assault with intent to murder, you may consider whether that offense was fairly within the common, unlawful activity of arson; that is, whether the defendant might have expected the charged offense to happen as part of that activity. *There can be no criminal liability for any crime not fairly within the common, unlawful activity.*

(emphasis added). This does not negate the existence of a separate intent requirement, and earlier in its instructions the trial court made clear that the jury could not convict Daniels of murder without determining "whether he intended to kill, whether he intended to do great bodily harm, or whether he created a very high risk of death or great bodily harm, knowing that death or such harm was the probable result of what he did." It simply adds an additional requirement: Daniels is not guilty unless he both intended the deaths to occur *and* might have expected the deaths to occur as a result of the arson.

Daniels asserts that the Michigan Supreme Court addressed the propriety of the same instruction in *Kelly*, 378 N.W.2d at 373, and found it to be erroneous. It did not. Because the defendant in *Kelly* had not objected to the instructions at trial, the court did "not address the defendant's contention that the actual instruction given does not require [the appropriate] level of intent to be found"; instead, it reviewed the instructions "only to determine whether the defendant was subject to a manifest injustice" and found no manifest injustice. *Id.* at 373. We have not discovered any other Michigan case disapproving of the instruction either. Therefore, we are not fully convinced that the instruction misstates Michigan law.

Second, even assuming *arguendo* that the instruction is inaccurate, Daniels cannot show that it "so infected the entire trial that the resulting conviction violates due process," *Cupp*, 414 U.S. at 147. Michigan courts evaluate the appropriateness of jury instructions by looking at the instructions "in their entirety." *Kelly*, 378 N.W.2d at 370. A defendant cannot show error by extracting "several short excerpts from the entire context of the charge" and discussing "their claimed inadequacies at great length." *People v. Dye*, 96 N.W.2d 788, 792 (Mich. 1959). Here, Daniels's only hope is to do just that. It is undisputed that, earlier in its instructions, the trial court accurately stated the *mens rea* requirement twice:

> [Y]ou must determine, as to Mr. Daniels, separately, whether he intended to kill, whether he intended to do great bodily harm, or whether he created a very high risk of death or great bodily harm, knowing that death or such harm was the probable result of what he did.
>
> . . .
>
> Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it, and can be convicted of that crime as an aider and abettor.

These instructions make clear that the jury could not convict Daniels without finding that he assisted McKinney in burning down the house, that the assistance was intentional, and that the assistance was given with intent to kill or do greatly bodily harm or knowledge that such harm was probable. We do not think, in this case, that one arguably misleading statement of the *mens rea* requirement is likely to have caused the jury to ignore repeated prior statements of the correct requirement.

To be sure, the challenged instruction is confusing; we can understand how a juror theoretically might have interpreted it to weaken the *mens rea* requirement and why Daniels would not have wanted it given. But we cannot say that it violated Daniels's federal constitutional rights. We affirm the denial of Daniels's due-process claim.

C

For similar reasons, we also reject Daniels's claim that Burgess's failure to object to the challenged instruction was ineffective assistance of counsel. To prevail on an ineffective-assistance claim, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's failure to object to jury instructions is deficient only if the petitioner can establish that the instructions were inaccurate. *Cross v. Stovall*, No. 05-1528, 2007 U.S. App. LEXIS 14511, at *17 (6th Cir. June 14, 2007) (unpublished). And to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Daniels cannot satisfy the first requirement because he has not established that the instructions were inaccurate; he cannot satisfy the second requirement because the jury instructions, taken as a whole, apprised the jury of the *mens rea* requirement, such that modification of the challenged segment of the instructions would be quite unlikely to have affected the verdict. We affirm the denial of Daniels's ineffective-assistance claim.

IV

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.