BOGGS, Circuit Judge,
dissenting.
The actual jury instruction that was given read: “Before you can find the defendant guilty of a crime as a complicitor or an aider and abettor, you must find ... that ... the defendant aided or abetted another in purposely committing the offenses.” All parties agree that the ideal jury instruction would have read: “Before you can find the defendant guilty of a crime as a complicitor or an aider and abettor, you must find ... that ... the defendant purposely aided or abetted another in committing the offenses.”[1] Because I do not believe that the misplacement of the word “purposely” by five words gives rise to habeas relief, I respectfully dissent.
On October 23, 2009, the defense rested its case. The trial judge, defense counsel, and the prosecutor then held a preliminary discussion about the jury instructions. Langford’s counsel told the judge that the prosecutor had given him a proposed version of the jury instructions the previous day. Langford’s counsel stated that he had reviewed the prosecution’s version but had some objections and requested modifications. The judge invited defense counsel and the prosecutor into chambers to do a “preliminary sort through those issues.” Both counsel agreed to do so, and the judge adjourned court.
Court resumed later that afternoon, and the parties conducted an on-the-record review of the jury instructions. The judge noted that defense counsel and the prosecutor had provided the judge separate copies of the jury instructions. As the judge explained, defense counsel “integrated those jury instructions to include additional instructions that he would like to have provided to the jury as well as deletions that he would like for the Court to consider that were originally provided by the State.” The parties agreed to work from that integrated copy in their preliminary review of the jury instructions.
*439 During this discussion, the judge asked counsel if they had any objections to the complicity section of the proposed jury instructions. Langford’s counsel flys-peeked the very issue that now forms the basis of Langford’s habeas petition. The following discussion occurred among the judge, the prosecutor (Mr. Lowe), and defense counsel (Mr. Gatterdam).
THE COURT: I think that there was the complicity issue that was discussed in chambers.
MR. LOWE: Okay. Judge, the complicity — I think Mr. Gatterdam agrees that we can do and/or, but I think what we decided to do was I think we were going to take out “solicited or procured another to commit the offense or,” and I think we are just going to go with “aiding and abetting another in committing the offenses.” THE COURT: Okay. Mr. Gat-terdam, do you see where that text is, or do you have any comment?
MR. GATTERDAM: I do. I guess I preliminarily just want to make sure that-and until we see it, I guess I don’t know whether I can respond.
The complicity section says that you need to insert the culpable mental state and then go into the aided or abetted language and definitions, and I presume that will be done we revise.
MR. LOWE: Yes.
MR. GATTERDAM: So I probably will have no objection, but as it is now, I’m not clear.
MR. LOWE: We agree a mental state needs to be in there.
(emphasis added). Thus, it appears that this version of the proposed jury instructions omitted the mens rea element for complicity. Langford’s counsel specifically requested that the court “insert the culpable mental state and then go into the aided or abetted language and definitions.” The judge and both parties agreed to conduct a second on-the-record review of the revised jury instructions prior to closing arguments the following week. At the end of the discussion, Langford’s counsel assumed responsibility for e-mailing a revised version of the jury instructions to the prosecution. The judge then adjourned court until Monday afternoon.
Court resumed as scheduled on Monday afternoon. The judge noted that she had received a revised version of the jury instructions from the prosecution. The judge and the parties conducted a second on-the-record review of the instructions, including the complicity instruction. The following discussion occurred:
THE COURT: Anything else, Counsel, we need to change?
MR. GATTERDAM: I have a typo on page 11. I don’t know if you’re at page 11 now or 12. It was the last full paragraph, starts with, “Before you can find the defendant of a crime as a complicitor.”
THE COURT: Yes. That’s still page 11.
MR. GATTERDAM: On or about the 18th day of July, blah-blah, Agg. Murder or Murder or aided and abetted another in “knowingly committing" instead of “committed. ”
THE COURT: All right. Got you. Okay.
(emphasis added). Thus, Langford’s counsel examined the very sentence that is now at issue — closely enough, in fact, to catch a typo. And yet counsel made no objection about the word “purposely” being in the wrong place in the sentence.
Additionally, any error in the jury instructions is harmless error, in light of the evidence that was presented at trial. A trial court’s failure to charge an element of an offense is subject to harmless-error analysis. Neder v. United States, 527 U.S. *440 1, 12, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The Supreme Court has, in particular, recognized that a trial court’s failure to instruct fully and accurately about the necessary mens rea for accomplice liability is reviewed for harmless error. See California v. Roy, 519 U.S. 2, 3-4, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996). On habeas, an error is harmless unless it “had substantial and injurious effect or influence in determining the jury’s verdict.” Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).
In Dawson v. United States, we reviewed a habeas petition in which a defendant claimed that his convictions for unlawful firearm possession were invalid because the trial court instructed the jury that it could convict on a theory of constructive possession. 702 F.3d 347, 349 (6th Cir.2012). We found that giving the constructive-possession instruction was error because there “was no testimony suggesting that [the defendant] constructively possessed the firearm.” Id. at 350. Nonetheless, we held that the error was harmless because “[viewing the record as a whole, it [wa]s clear the jury found [the defendant] guilty based on a theory of actual possession.” Ibid.
Here, the evidence at trial established that the “F and L boys” beat up Langford and that Langford, therefore, had a motive to seek revenge. Additionally, Nichole Smith testified that she witnessed Lang-ford shooting at the F and L group. And two federal prisoners, Jason Arnold and Isaac Jackson, testified that Langford confessed to his involvement in Jones’s death. The jury certainly was entitled to disbelieve this testimony, but there was no evidence at all to support conviction under a theory of accomplice liability where Lang-ford, say, performed in a production of Hamlet and, thereby, unwittingly motivated Jones’s shooter to take purposeful action and to avenge immediately the attack on Langford. That is, there was simply no evidence that would have allowed the jury to convict Langford under a strict-liability conception of complicity.
It is true that the instruction that was given does not track Ohio’s model instruction. But “the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief.” Estelle v. McGuire, 502 U.S. 62, 71-72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). “Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to the [state] model.” Id. at 72, 112 S.Ct. 475. The essential question is “whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.” Ibid. It is insufficient “that the instruction is undesirable, erroneous, or even universally condemned.” Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (internal quotation marks and citation omitted).
Our court has said that “we may grant the writ based on errors in state jury instructions only in extraordinary cases.” Daniels v. Lafler, 501 F.3d 735, 741 (6th Cir.2007). In Daniels, we denied a claim similar to Langford’s “even though one sentence of the instructions contained a confusing and arguably misleading statement of the law.” Id. at 737. Here, the jury instruction that was given was not the exact one that ideally would have been given. It was not so wrong that any of those involved, whose discussions indicated that they were trying to get it right, noticed the displacement of one word. That does not provide a basis for habeas relief. We must consider only “whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.” Estelle, *441 502 U.S. at 72, 112 S.Ct. 475 (internal quotation marks omitted) (emphasis added). Because I do not believe that there is such a likelihood in light of the record as a whole, I respectfully dissent.

. This instruction tracks Ohio’s model jury instruction, which states: "Before you can find the defendant guilty, you must find beyond a reasonable doubt, that ... the defendant (insert culpable mental state if one is required for the commission of the principal offense) [aided or abetted] another in committing the offense of (specify offense).” 2-OJI-CR 523.03.