*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENYON BAILEY,

Defendant-Appellant.

FOR PUBLICATION
September 24, 2019
9:10 a.m.

No. 342175
Wayne Circuit Court
LC No. 17-004208-01-FC

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

CAMERON, J.

Following a bench trial, defendant, Kenyon Bailey, was convicted of murdering the drug dealer who reportedly sold Bailey poor quality narcotics. Bailey now appeals his convictions of felon in possession of a firearm (felon-in-possession), MCL 750.224f, second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony, second offense, (felony-firearm), MCL 750.227b. Bailey was sentenced to 10 to 15 years' imprisonment for the felon-in-possession conviction, 30 to 50 years' imprisonment for the second-degree murder conviction, and a consecutive sentence of five years' imprisonment for the felony-firearm conviction. We affirm Bailey's convictions, but vacate his sentence and remand for resentencing and recalculation of Bailey's jail credit.

## I. FACTUAL BACKGROUND

Bailey had recently purchased narcotics from the victim, the owner of an automobile repair shop in Detroit, and later discovered that the drugs were ineffective. Bailey and his friend, Stacey Reilly, drove to the victim's repair shop, and Bailey attempted to get his money back from the victim. Bailey entered the repair shop, but he returned to his car approximately four minutes later. Bailey then went back inside the repair shop.

After Bailey reentered the repair shop, Reilly heard a series of gunshots. Reilly stepped into the repair shop and encountered two of the victim's employees. Reilly searched the employees for weapons. As Reilly searched the employees, he saw Bailey run out of the repair shop. Reilly found Bailey seated in his car with a gun on his lap. At trial, Reilly identified the

-1-

gun in Bailey's lap as a .40 caliber handgun. Bailey appeared shaken and distressed, and asked Reilly if he planned to "tell on him." Reilly told Bailey he would not tell anyone what he saw.

Detroit police responded to the shooting. Two officers at the scene saw blood and multiple spent .40 caliber bullet casings on the floor of the repair shop. The officers found the victim on the ground between two cars and determined that he had died of multiple gunshot wounds. The officers discovered a .32 caliber revolver wedged underneath the victim's body. Six spent shell casings were discovered in the cylinder of the revolver. However, no .32 caliber bullets were discovered at the scene of the crime. A medical examination concluded that the victim was shot six times. Bailey was arrested and charged with felon-in-possession, second-degree murder, and felony-firearm.

Bailey testified at trial, asserting that the victim threatened him with a gun first and that the killing was in self-defense. Bailey was convicted of the charged crimes. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Bailey argues that there was insufficient evidence to convict him of second-degree murder because he acted in self-defense when he shot the victim. We disagree.

This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Lanzo Const Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). "The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 474. "Evidence is sufficient if, when viewed in the light most favorable to the prosecution, 'a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.' " *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (citation omitted). Direct and circumstantial evidence, including reasonable inferences arising from the use of circumstantial evidence, may provide sufficient proof to meet the elements of a crime. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014).

Bailey maintains that the trial court erred by finding him guilty of second-degree murder because his shooting of the victim was justified as an act of self-defense. The elements of second-degree murder are as follows:

> (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death. [*People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007).]

A killing may be considered justified if the defendant acts in self-defense. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). Generally, an individual who is "not the aggressor in an encounter is justified in using a reasonable amount of force against his adversary," but only if the individual believes that he is in immediate danger of bodily harm and that the use of force is necessary to avoid said danger. *Id*. When a defendant raises the issue of self-defense, he must "satisf[y] the initial burden of producing some evidence from which a [factfinder] could conclude that the elements necessary to establish a prima facie defense of self-defense

-2-

exist . . . ." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks and citation omitted). The prosecution is then required to "exclude the possibility of self-defense beyond a reasonable doubt." *Id*. (quotation marks and citation omitted).

Bailey argues that he acted in self-defense because the victim pulled out a gun and shot at him. Bailey further contends that he felt it necessary to pull out his own gun and shoot back at the victim in self-defense because he believed that he was in imminent danger of great bodily harm. In support of this assertion, Bailey argues that he was within his right to stand his ground in the face of a perceived attack. Bailey directs this Court to *People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002), in which our Supreme Court opined:

> [A] person is *never* required to retreat from a sudden, fierce, and violent attack; nor is he required to retreat from an attacker who he reasonably believes is about to use a deadly weapon. In these circumstances, as long as he honestly and reasonably believes that it is necessary to exercise deadly force in self-defense, the actor's failure to retreat is never a consideration when determining if the necessity element of self-defense is satisfied; instead, he may stand his ground and meet force with force. [Footnote omitted.]

The evidence presented at trial does not suggest that the victim used a deadly weapon against Bailey, which would have necessitated Bailey's use of deadly force as a means of self-defense. Rather, the evidence indicates that Bailey walked into the repair shop and walked back out again. After approximately seven minutes, Bailey reentered the repair shop, got into an argument with the victim, and shot him. The trial court viewed a surveillance video of the offense, and found that there was no indication that the victim pulled a gun out and fired at Bailey; rather, the trial court found that the surveillance video suggested that Bailey left the repair shop and then opened fire on the victim immediately after returning to the repair shop. Additionally, the evidence showed that Bailey shot the victim six times. One of the bullets entered through the victim's back, suggesting that the victim had his back to Bailey when he was shot. The trial court could certainly choose to disbelieve Bailey's argument that he acted in self-defense when he shot the victim six times, particularly in light of the surveillance video and the fact that one of the bullets entered the victim's body from behind. Further, although a .32 caliber revolver was discovered underneath the victim's body, there was no evidence that the gun was actually fired inside the repair shop. No .32 caliber bullets were found in the repair shop after the shooting, suggesting to the trial court that the victim did not fire his gun at Bailey. Thus, the prosecution presented sufficient evidence to rebut Bailey's theory of self-defense. See *Stevens*, 306 Mich App at 630.

Additionally, Bailey argues that, because he acted in self-defense, the prosecution could not establish that he acted with malice. As previously noted, one of the elements of second-degree murder requires a defendant to act with malice. *Smith*, 478 Mich at 70. Malice is defined as

> the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. Malice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause

death or great bodily harm. [*People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation and quotation omitted).]

The prosecution is not required to prove that a defendant intended to harm or kill a specific victim. *Id*. Rather, "the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *Id*. (quotation marks and citation omitted). In this instance, the prosecution proved that the victim's murder was not done in self-defense, and thus, no justification or excuse for the killing was presented in the trial court. It is clear that Bailey opened fire on the victim in a closed space, with—at the very least—complete disregard for the fact that his conduct could cause the victim great bodily injury or harm. Therefore, the prosecution presented evidence that proved, beyond a reasonable doubt, that Bailey acted with malice and without the justification of self-defense. See *Werner*, 254 Mich App at 531. Accordingly, sufficient evidence existed to support Bailey's conviction of second-degree murder.

## III. DUE PROCESS AND RIGHT TO COUNSEL

Bailey argues that the trial court violated his right to due process and right to counsel. Bailey first argues that the trial court violated his right to due process by failing to allow him time to consult with his attorney before withdrawing his plea. He then argues that the trial court violated his right to counsel when it sua sponte substituted his appointed defense counsel. We disagree that the trial court's plea procedures violated Bailey's right to due process, but we agree that the trial court erred by substituting defense counsel. However, the trial court's substitution of counsel did not constitute plain error affecting Bailey's substantial rights; therefore, Bailey is not entitled to relief.

## A. WITHDRAWAL OF PLEA

This Court reviews a trial court's decision regarding a motion to withdraw a plea for an abuse of discretion. *People v Martinez*, 307 Mich App 641, 646; 861 NW2d 905 (2014). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id*. (quotation marks and citation omitted). This Court reviews all underlying questions of law de novo. *Id*. "[A] trial court's factual findings are reviewed for clear error." *Id*. at 646-647. (quotation marks and citation omitted).

Before sentencing, as is the case here, a trial court may withdraw a plea "on the defendant's motion or with the defendant's consent, only in the interest of justice . . . ." MCR 6.310(B)(1). A plea is considered to be withdrawn "in the interest of justice" if a defendant provides "a fair and just reason" for withdrawing the plea. *People v Fonville*, 291 Mich App 363, 378; 804 NW2d 878 (2011) (quotation marks and citation omitted). "Fair and just reasons include reasons like a claim of actual innocence or a valid defense to the charge." *Id*. Conversely, "dissatisfaction with the sentence or incorrect advice from the defendant's attorney" are not considered "fair and just reasons" for withdrawing a plea. *Id*.

Bailey was scheduled to be sentenced following his entry into a plea agreement. At the sentencing hearing, the following exchange took place:

> *Defendant Bailey*: Hey I—Listen, I am not guilty . . . . I shouldn't have took [sic] this plea, I should have went [sic] to trial you know.

-4-

I was scared. I didn't understand it really, you know, what I'm saying, and—

*The Court*: You had a right to be scared.

*Defendant Bailey*: Right, you know, I didn't go up there to kill that man, no, honest to God I didn't. [The victim] shot at me first, and that man had a gun on him and I had my gun on me but he pulled his out first and it's on camera and that's all I got to say, sir.

*Ms. Logan* [the prosecutor]: Well, Your Honor, it sounds like the defendant is trying to withdraw his plea.

*The Court*: That's what it sounds like, is that what you are trying to do?

*Defendant Bailey*: Yes, sir, that's why I went to the library, I want to withdraw my plea.

*The Court*: Hold it, hold it. I don't want to hear about you going to the library . . . .

\* \* \*

*Ms. Logan* [the prosecutor]: Well, Your Honor . . . I don't want an innocent man to go to prison, and if the defendant is claiming that he did this in self-defense, albeit, it's all on video—

*The Court*: Right. Right.

*Ms. Logan* [the prosecutor]: —I think the court should withdraw his plea and let us go to trial.

*The Court*: Is that what you want to do?

*Defendant Bailey*: Yes, sir.

*The Court*: All right. I'll allow you to withdraw your plea.

The trial court asked Bailey whether he intended to withdraw his plea on two occasions during the conversation, and Bailey confirmed that he wished to withdraw his plea and go to trial.

Bailey does not argue that the trial court erred by accepting his request to withdraw his plea. Rather, Bailey argues that the trial court violated his right to due process by failing to allow him time to consult with defense counsel before withdrawing his plea. Bailey cites to *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), which concerns a defendant's right to represent himself at trial, as well as to MCR 6.005(D), concerning the trial court's responsibility to appoint legal counsel to represent indigent defendants. Bailey contends that the trial court effectively denied him the right to counsel by failing to give him time to discuss his decision to

withdraw the plea with defense counsel. However, the record does not support Bailey's argument. Bailey clearly and unequivocally stated that he should not have entered a plea and that he wished to go to trial because he acted in self-defense. The trial court made an effort to clarify Bailey's request with defense counsel, who told the judge "[w]ell, judge, I'm going to let [Bailey] speak." Bailey followed his attorney's direction and agreed with the trial court that he did want to withdraw his plea. Neither Bailey nor his counsel requested additional time to reexamine the wisdom of Bailey's request to withdraw his plea. Nor was there any indication that Bailey was forced to withdraw his plea or that he did not understand the consequences of his actions. A trial court has no obligation to require that attorney-client discussions take place.

## B. SUBSTITUTION OF COUNSEL

Bailey also argues that the trial court violated his right to counsel by substituting his appointed defense counsel without his consent. We agree.

After the trial court granted Bailey's request to withdraw his plea, the trial court removed Bailey's first appointed attorney and replaced him with Lillian F. Diallo (Diallo). The trial court appointed new counsel following Bailey's explanation that he only pleaded guilty because he was "scared" and that he "didn't understand [the legal issues] really" until he "went to the library" before sentencing. The trial court expressed concern about defense counsel's continued representation:

> *The Court*: Do you want Mr. Harris to continue representing you?
>
> *Defendant Bailey*: Yes, sir.
>
> *The Court*: Oh, all right.
>
> * * *
>
> *The Court*: Well, let me speak, to say this to [Bailey].
>
> Usually when a person has represented you—of course, you have a difference with Mr. Harris, now, you're saying that you are innocent and he's assisted you in pleading guilty, so I think you should have a different lawyer.
>
> *Defendant Bailey*: Well—
>
> *The Court*: We'll appoint a lawyer to represent you.
>
> *Mr. Harris* [defense counsel]: Judge, first of all, I have not addressed the court on this, I am not moving to withdraw.
>
> *The Court*: Yeah, but Mr. Harris, I think that when you—that's quite a problem, you have already—this man has said to me this morning that he plead [sic] guilty on your advice and now he said he is innocent.
>
> *Mr. Harris* [defense counsel]: Well wait a minute.

*The Court*: No, you are out.

Harris explained that he informed Bailey regarding his option to enter into a plea agreement or go to trial, but that he never forced Bailey to enter a plea. Nevertheless, new counsel was appointed.

Because Bailey did not object to the substitution of defense counsel in the trial court, this issue is unpreserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Therefore, this Court's review is for plain error affecting Bailey's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 763. The third aspect "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* Reversal will only be warranted where the plain error leads to "the conviction of an actually innocent defendant," or where an error affects the "fairness, integrity, or public reputation" of the judicial proceeding. *Id.* at 763-764.

Since 1985, this Court has held in several decisions that a trial court may only sua sponte remove and substitute appointed counsel for "gross incompetence, physical incapacity, or contumacious conduct." See *People v Abernathy*, 153 Mich App 567, 568-570; 396 NW2d 436 (1985); *People v Durfee*, 215 Mich App 677, 681; 547 NW2d 344 (1996); *People v Johnson*, 215 Mich App 658, 663; 547 NW2d 65 (1996); *People v Coones*, 216 Mich App 721, 728; 550 NW2d 600 (1996). In light of the principle of stare decisis codified under MCR 7.215(J)(1), we are bound by the rule established in these cases.

However, we question the legal support upon which this rule was first established in Michigan. In 1980, this Court held in *People v Fox*, 97 Mich App 324, 328; 293 NW2d 814 (1980), rev'd on other grounds 410 Mich 871 (1980), that "it is well settled that gross incompetence, physical incapacity or contumacious conduct may justify the court's removal of an attorney." The *Fox* Court cited to *United States v Dinitz*, 538 F2d 1214 (CA 5, 1976), reh den 542 F2d 1174 (CA 5, 1976), cert den 429 US 1104, 97 S Ct 1133, 51 L Ed 2d 556 (1977), as support for this newly established rule under Michigan law. In *Dinitz*, the trial court removed the defendant's *retained* counsel, Maurice Wagner, from the courtroom at the beginning of the trial, which resulted in a mistrial shortly after Wagner made his opening statement. *Id.* at 1217.[1] According to the federal court, "the judge was prompted to order Wagner's removal by Wagner's efforts, during his opening statement, to tell the jury about [a federal agent's] attempt to extort money from [the defendant]." *Id.* Wagner did not move for reinstatement, but the defendant made repeated motions requesting Wagner's reinstatement before the next trial. *Id.* at 1218.

The defendant in *Dinitz* argued that "his Sixth Amendment right to counsel was violated when the district court banned Wagner from the first trial and precluded him from appearing

---

[1] During the first trial, the defendant had two other attorneys also representing him. *Dinitz*, 538 F2d at 1217 n 1. However, he chose to represent himself during the second trial. *Id.* at 1218.

thereafter." *Id*. at 1219. Acknowledging that courts must respect a defendant's choice of counsel, the *Dinitz* court explained that the defendant had a right to choose his counsel—subject to certain limits. *Id*. Because "attorneys are officers of the courts before which they appear," the *Dinitz* court held that "courts are necessarily vested with the authority, within certain limits, to control attorneys' conduct." *Id*. While the Sixth Amendment helped define the limits of judicial discretion, the inquiry turned on "whether, *given the defendant's qualified right to choose his own counsel*, the trial court's refusal to hear the defendant through his chosen counsel constituted an abuse of discretion." *Id*. (emphasis added). Based on Wagner's conduct at trial, the court in *Dinitz* concluded that the district court did not abuse its discretion when it dismissed Wagner. *Id*. at 1220-1222.

The court in *Dinitz* addressed a very different question than that posed in this case, which is whether the trial court erred when it removed Bailey's *appointed* counsel. Importantly, a defendant has a "right to choice of counsel[,]" but this right is "limited and may not extend to a defendant under certain circumstances." *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009) (citation omitted). Under Michigan law, "[a]s an indigent receiving counsel at public expense," Bailey "was not entitled to choose his attorney." *People v Ackerman*, 257 Mich App 434, 456; 669 NW2d 818 (2003). The court's decision in *Dinitz* relied on the well-settled rule that all defendants have the right to retain counsel of their choice. However, in this case, there is no such right implicated, and whether a trial court may replace a defendant's appointed counsel for reasons other than "gross incompetence, physical incapacity or contumacious conduct" is a discernibly different question than the one addressed in *Dinitz*. Thus, we question the rule adopted in *Fox* and later applied in *Abernathy*, *Durfee*, *Coones,* and *Johnson*. Importantly, those cases all involved appointed counsel—not retained counsel—yet this distinction is neither recognized nor addressed in those cases.

Furthermore, not even the *Dinitz* court articulated the standard established in *Fox*—that courts may only substitute counsel upon a showing of gross incompetence, incapacity, or contumacious conduct. *Fox*, 97 Mich App at 328. Rather, the court in *Dinitz* examined each of the defense counsel's transgressions and determined whether the district court's dismissal constituted an abuse of its discretion. See *Dinitz*, 538 F2d at 1219-1220 ("Thus, in the context of [the defendant's] case, we must consider each instance at which the district judge exercised his discretion in disallowing Wagner to appear for [defendant]."). Nevertheless, the court in *Fox* used these case-specific facts to establish a rule that treats the removal of appointed and retained counsel the same. This approach relies upon a flawed legal analysis and sets an unwarrantedly high bar for trial courts to find "gross incompetence, physical incapacity or contumacious conduct" before appointed counsel may be removed.

In our view, the standard that this Court should adopt is set forth in *Daniels v Lafler*, 501 F3d 735 (CA 6, 2007). In *Daniels*, the Sixth Circuit stated, "[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Id*. at 739, quoting *Caplin & Drysdale v United States*, 491 US 617, 624; 109 S Ct 2646; 105 L Ed 2d 528 (1989) (quotation marks omitted). The defendant in *Daniels*, as in this case, argued that the district court violated his Sixth Amendment right to counsel when it replaced his court-appointed attorney with another court-appointed attorney. *Id*. at 737. The court held "that a defendant relying on court-appointed

counsel has no constitutional right to the counsel of his choice." *Id*. at 740. While this is a maxim well established under Michigan law, the court in *Daniels* further explained:

> This does not mean that an indigent defendant never could establish that the arbitrary replacement of court-appointed counsel violated his constitutional rights. The replacement of court-appointed counsel might violate a defendant's Sixth Amendment right to adequate representation or his Fourteenth Amendment right to due process if the replacement prejudices the defendant—e.g., if a court replaced a defendant's lawyer hours before trial or arbitrarily removed a skilled lawyer and replaced him with an unskilled one. [*Id.*]

Thus, under *Daniels*, Bailey would have no right to choose his appointed counsel, and without a showing that the trial court violated his constitutional right to adequate representation or due process, there would be no violation.

The standard in Michigan, however, requires us to determine whether the trial court's substitution of counsel violated Bailey's right to counsel. As stated previously, binding case law provides that "[a] trial court may remove appointed counsel for gross incompetence, physical incapacity, or contumacious conduct." See e.g., *Coones*, 216 Mich App at 728. The trial court attempted to justify the removal of Bailey's defense counsel by opining that a conflict of interest must exist between Bailey and his appointed counsel because appointed counsel "assisted [Bailey] in pleading guilty" and would now have to assert Bailey's innocence at trial. In doing so, the trial court implied that Bailey's appointed counsel encouraged him to plead guilty and this advice, in light of Bailey's later claim of innocence, must have fatally compromised their attorney-client relationship. However, no evidence was presented to the trial court supporting the notion that defense counsel erroneously urged Bailey to plead guilty or that any actual conflict existed. Instead, it merely appeared that Bailey changed his mind about pleading guilty and expressed his desire to go to trial. Bailey expressed no desire to have new defense counsel appointed, and there was no clearly justifiable reason to do so. Clearly, appointed counsel's conduct did not rise to the level of gross incompetence. Moreover, there is no evidence of incapacity or contumacious conduct. Thus, the trial court erroneously substituted counsel.

However, this Court is not obligated to reverse Bailey's convictions, as he requests, because the trial court's decision did not affect Bailey's substantial rights. When a trial court's error "implicates a constitutional right," this Court must determine whether the error was structural. *People v Willing*, 267 Mich App 208, 223; 704 NW2d 472 (2005). "Structural errors are defects that affect the framework of the trial, infect the truth-gathering process, and deprive the trial of constitutional protections without which the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *People v Watkins*, 247 Mich App 14, 26; 634 NW2d 370 (2001). Structural errors require automatic reversal, and this Court held in *Durfee* that the harmless-error doctrine does not apply to a preserved issue as to whether the trial court violated the defendant's right to counsel when it substituted appointed counsel. *Durfee*, 215 Mich App at 681. When the issue is preserved, "a 'prejudice' standard simply does not apply." *Id*. However, unlike in *Fox*, *Abernathy*, *Durfee, Coones,* and *Johnson*, the issue here is unpreserved given that neither Bailey nor his original appointed counsel expressly objected to the trial court appointing new trial counsel. An unpreserved constitutional issue—structural or nonstructural—is reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-

764. The record indicates that Bailey was never without representation because Diallo replaced Bailey's original appointed counsel immediately after the removal, and Bailey was represented at all times, including during trial. Bailey has not argued that he was deprived of the effective assistance of counsel or that counsel failed to adequately represent him. There is no evidence that the removal of Bailey's original appointed counsel affected the outcome of the proceedings. If anything, the trial court appointed a new attorney who was more willing to go to trial considering Bailey's original attorney was—in the trial court's eyes—more favorable to taking a plea than going to trial. Accordingly, because the trial court's substitution of counsel did not amount to plain error affecting Bailey's substantial rights, Bailey is not entitled to the relief he seeks. See *Carines*, 460 Mich at 763-764.

## IV. SENTENCING ERRORS

Bailey argues that the trial court erred for a number of different reasons during sentencing. Namely, Bailey contends that the trial court erred by (1) assessing 15 points for offense variable (OV) 5, (2) failing to consider mitigating factors in crafting an appropriate sentence, (3) failing to properly calculate jail credit, and (4) denying him his right of allocution.

We agree that the trial court erred in its assessment of 15 points under OV 5, denied Bailey the right of meaningful allocution at sentencing, and incorrectly calculated Bailey's jail credit. However, we conclude that the trial court did not fail to consider mitigating factors when sentencing Bailey.

Bailey first argues that the trial court erred by assessing 15 points under OV 5. The prosecution agrees and so do we. This Court reviews for clear error the trial court's factual determinations at sentencing and "review[s] de novo whether the factual determinations were sufficient to assess points under OV [5]." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). "When calculating the sentencing guidelines scores, a trial court may consider all evidence in the record, including but not limited to the presentence investigation report (PSIR) and admissions made by a defendant during a plea proceeding." *People v Jackson*, 320 Mich App 514, 519; 907 NW2d 865 (2017).

OV 5, MCL 777.35, "is scored when a homicide or homicide-related crime causes psychological injury to a member of a victim's family." *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017). MCL 777.35 provides:

(1) Offense variable 5 is psychological injury to a member of a victim's family. Score offense variable 5 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Serious psychological injury requiring professional treatment occurred to a victim's family . . . 15 points

(b) No serious psychological injury requiring professional treatment occurred to a victim's family . . . 0 points

-10-

(2) Score 15 points if the serious psychological injury to the victim's family may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive.

"In this context, 'serious' is defined as 'having important or dangerous possible consequences.' " *Calloway*, 500 Mich at 186 (citation omitted).

At the original sentencing hearing, the victim's wife gave a victim impact statement, stating:

I was [the victim]'s wife. We be [sic] together since I was 14. I am 50 years old now, we would have been celebrating our 20th anniversary August the 4th of this year.

I am—I just want to say that I forgave [Bailey], I don't even know him, but I forgave him a month after this happened. Before they even caught him.

But I knew that [Bailey] wasn't a stranger to my husband. And [Bailey] not only took my husband[,] he took a son, he took a brother, he took a grandfather[,] he took a great grandfather.

\* \* \*

[The victim] have [sic] 15 grand kids. And for [Bailey] to go in the shop and do this to my husband . . . . I feel that [Bailey] should get life . . . .

The victim's wife also gave a statement at Bailey's second sentencing hearing, stating that she "prayed that [the trial court] and God give [Bailey] the sentence that he deserves and [he] never see [sic] the light of day again for doing this" to the victim. On the basis of the statements presented to the trial court, insufficient evidence was presented in support of the finding that the victim's wife suffered psychological injury warranting the assessment of 15 points under OV 5. Although the victim's wife clearly experienced grief following her husband's death, there was no evidence presented to show that she experienced the type of serious psychological trauma contemplated in MCL 777.35. See *Calloway*, 500 Mich at 186. Consequently, the trial court erred when it scored OV 5 at 15 points. See *Schrauben*, 314 Mich App at 196. OV 15 should have been scored at zero. See MCL 777.35(1)(b).

Although OV 5 should have been assessed at zero points, the trial court's error does not affect Bailey's minimum sentencing guidelines range. Bailey had a total of 117 prior record variable (PRV) points, which places him in Level F of the sentencing grid. Although Bailey's total OV score is not noted in the available record, Bailey's minimum sentencing guidelines range for the second-degree murder conviction was 315 months to 1,050 months, indicating that his OV score was between 50 and 99 points under the applicable sentencing grid. MCL 777.61. This places him in OV Level II. MCL 777.61. On appeal, the prosecution confirms that Bailey was placed in OV Level II and that correcting the assessment of points assessed under OV 5 would not change Bailey's minimum sentencing guidelines range. OV Level II is a broad range, and there is no indication that Bailey's minimum sentencing guidelines range would change if OV 5 was properly scored. Therefore, resentencing is not required based on Bailey's arguments

concerning the improper scoring of OV 5. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required."). Nonetheless, for the reasons discussed *infra*, it is necessary to vacate Bailey's sentence and remand this matter to the trial court so that Bailey can be resentenced and his jail credit can be recalculated. On remand, the trial court shall correct Bailey's sentencing information report to reflect a score of zero points for OV 5.[2]

Second, Bailey argues that it was unclear whether the trial court took into account mitigating factors when sentencing him. More specifically, Bailey contends that the trial court likely ignored his psychiatric history, particularly the fact that he was previously diagnosed with schizophrenia. Because this sentencing challenge is unpreserved, our review is for plain error affecting Bailey's substantial rights. See *Carines*, 460 Mich at 763-764.

Bailey presents no supporting authority for the proposition that a trial court must consider mitigating factors on the record at sentencing. Indeed, contrary to Bailey's suggestion, trial courts are not required to expressly or explicitly consider mitigating factors at sentencing. See *People v Osby*, 291 Mich App 412, 416; 804 NW2d 903 (2011). Moreover, the trial court was provided with a copy of the PSIR, and the court discussed its contents at sentencing. The PSIR provides that "previous reports indicate the defendant suffered from [S]chizophrenia when he was shot in the face in 2006. The defendant denies taking any medication for that diagnosis." Because the trial court was clearly aware of the contents of the PSIR, which discussed Bailey's schizophrenia diagnosis, Bailey cannot conclusively show that the trial court failed to take into account his previously diagnosed mental illness. Thus, Bailey has failed to establish plain error. See *Carines*, 460 Mich at 763-764.

Third, Bailey argues that the trial court improperly calculated his jail credit. This argument is unpreserved, and our review is for plain error affecting Bailey's substantial rights. See *Carines*, 460 Mich at 763-764.

The calculation of jail credit is governed by MCL 769.11b, which provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

Bailey was granted 222 days of jail credit, but asserts that he is entitled to an additional 27 days of jail credit. Bailey contends that he was arrested on March 24, 2017, but that his jail credit was calculated from the later date of April 20, 2017. The parties do not dispute that Bailey

---

[2] Even if it was not proper to vacate Bailey's sentence, we would nonetheless remand this matter to the trial court for the ministerial task of correcting Bailey's sentencing information report to reflect a score of zero points for OV 5. See *People v Harmon*, 248 Mich App 522, 534; 640 NW2d 314 (2001).

was arrested in Kentucky on March 24, 2017. However, the parties disagree regarding whether Bailey was arrested in Kentucky "for the offense[s] of which he [was] convicted" in this case. See MCL 769.11b. Bailey contends that he was arrested in Kentucky and extradited to Michigan on crimes committed in relation to the victim's murder, whereas the prosecution asserts that Bailey was arrested and detained in Kentucky on unrelated charges. Bailey's PSIR indicates that Bailey was arrested in Kentucky for heroin trafficking and possession of drug paraphernalia. MCL 769.11b " 'neither requires nor permits sentence credit in cases . . . where a defendant is . . . incarcerated as a result of charges arising out of an unrelated offense or circumstance . . . .' " *People v Clark*, 315 Mich App 219, 234; 888 NW2d 309 (2016) (citation omitted). Therefore, because Bailey was arrested and jailed in Kentucky for offenses unrelated to the victim's murder, he is not entitled to additional jail credit for the time he spent in jail in Kentucky before he was extradited to Michigan.

However, the prosecution notes that Bailey may be entitled to one additional day of jail credit because the April 20, 2017 date from which Bailey's jail credit was calculated is incorrect. The PSIR indicates that Bailey was arrested on April 20, 2017, but the prosecution explains that Bailey was initially arraigned on the warrant in Wayne County on April 18, 2017. It is unclear how long Bailey was incarcerated in the Wayne County Jail after he was extradited from Kentucky, and whether he is entitled to additional jail credit. A review of the record suggests that Bailey was extradited to Michigan before April 20, 2017. Further, although Bailey was initially arraigned on April 18, 2017, it is unclear whether he spent additional time in the Wayne County Jail after his extradition to Michigan for which he is entitled to jail credit. We cannot conclusively determine whether Bailey is entitled to additional jail credit on the basis of the available record. Therefore, we remand this matter so that the trial court can verify the number of days that Bailey spent in jail in Michigan for his convictions.

Finally, Bailey argues that he was not afforded the right of allocution at sentencing. Because Bailey failed to object at the sentencing hearing, this Court's review is for plain error affecting Bailey's substantial rights. See *Carines*, 460 Mich at 763-764.

The right of allocution allows a defendant "to speak in mitigation of the sentence," and offers defendants "an occasion to accept responsibility" and begin the process of atonement. *People v Petty*, 469 Mich 108, 119-120; 665 NW2d 443 (2003). A defendant's right of allocution is recognized in MCR 6.425(E)(1)(c), which states:

> (E) Sentencing Procedure.
>
> (1) The court must sentence the defendant within a reasonably prompt time after the plea or verdict unless the court delays sentencing as provided by law. At sentencing, the court must, on the record:
>
> * * *
>
> (c) give the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence . . . .

-13-

Bailey was originally scheduled to be sentenced on September 15, 2017, following his entry into a plea agreement. Bailey used his opportunity for allocution to profess his innocence and indicate that he should not have pleaded guilty. Bailey was permitted to withdraw his plea, and he was not sentenced on September 15, 2017. Bailey's second sentencing hearing took place on November 27, 2017. At the second sentencing hearing, the following exchange occurred:

> *The Court*: [Bailey], do you have anything to say before I pass sentence on it?
>
> *Defendant Bailey*: Thank you, sir.
>
> *Ms. Diallo* [defense counsel]: Stand up sir.
>
> *Defendant Bailey*: I'm sorry to [the victim's wife], and—
>
> *The Court*: [Bailey], this is another case where this could have been avoided even though you claimed I don't have a lot of reason to suspect there wasn't something going on.
>
> You can't kill people because you bought some bad dope. That's not the way.
>
> When you get involved in criminal activity you can't go out and start killing people about it. You have to just chalk it up to a bad deal.
>
> *Defendant Bailey*: Yes, sir.

Thus, review of the transcript from the sentencing hearing establishes that the trial court did not give Bailey a meaningful opportunity for allocution. Rather, the trial court, without justification, interrupted Bailey almost immediately. The trial court then proceeded to impose Bailey's sentence without providing Bailey with the opportunity to speak further, which is a clear violation of MCR 6.425(E)(1)(c).

We find that the trial court's failure to comply with MCR 6.425(E)(1)(c) constitutes plain error. See *Carines*, 460 Mich at 763. The error likely affected the outcome of the proceedings in that Bailey was not given an opportunity to inform the trial court of "any circumstances" that he believed the trial court should consider when crafting and imposing the sentence. This could have resulted in Bailey being given a longer sentence, and it most certainly affected the fairness of the judicial proceeding. See *id.* at 763-764 (holding that reversal is warranted where the plain error affects the "fairness, integrity, or public reputation" of the judicial proceeding). Consequently, it is necessary to vacate Bailey's sentence and remand for the limited purpose of providing Bailey with the opportunity for allocution at resentencing. Of course, the trial court is not precluded from imposing the same sentence on remand if it determines that it is proper to do so.

## V. CONCLUSION

Sufficient evidence was presented to support Bailey's conviction of second-degree murder, MCL 750.317. Additionally, the trial court did not abuse its discretion by granting Bailey's request to withdraw his plea, but committed harmless error by dismissing defense counsel following the plea withdrawal. The trial court erred by assessing OV 5 at 15 points. The trial court correctly sentenced Bailey on the basis of facts contained in the PSIR, but it appears that Bailey may be entitled to additional jail credit. The trial court erred by failing to provide Bailey with the opportunity for allocution at sentencing.

We affirm Bailey's convictions, but vacate Bailey's sentence and remand for recalculation of Bailey's jail credit. On remand, the trial court shall give Bailey an opportunity for allocution at resentencing and shall correct Bailey's sentencing information report to reflect a score of zero points for OV 5. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Jonathan Tukel